## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

EXCELLENT JEAN-GILLES,

     Petitioner,

v.                                Case No. 8:22-cv-674-CEH-TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____/

## <u>ORDER</u>

Petitioner, a Florida prisoner, initiated this action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1). Respondent filed a response opposing the petition (Doc. 10) and exhibits (Doc. 10-2), to which Petitioner replied (Doc. 11). Upon consideration, the petition will be denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

Petitioner was charged by Amended Information with three counts of sexual battery by a person eighteen years of age or older upon a child less than 12 years of age, and one count of lewd or lascivious molestation by a person 18 years of age or older upon a child less than 12 years of age (Doc. 10-2, Ex. 1).[1] Petitioner pleaded no contest to three reduced counts of attempted sexual battery by a person 18 years or older upon a child less than 12 years old, and one count of lewd and lascivious molestation by a person 18 years or older upon a child

---

[1] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

less than 12 years old (*Id.*, Ex. 8). He was sentenced to concurrent terms of 30 years in prison on each count (*Id.*, Ex. 9 at 51).

Petitioner filed a *pro se* Motion to Withdraw Plea (*Id.*, Ex. 10). The motion was stricken as facially insufficient, and the trial court appointed conflict-free counsel to file an amended motion to withdraw (*Id.*, Ex. 11). Although conflict-free counsel filed a Notice of Appearance (*id.*, Ex. 12), he filed no amended motion to withdraw plea (*Id.*, Ex. 13). Petitioner appealed, but his convictions and sentences were affirmed. *Jean-Gilles v. State*, 291 So. 3d 571 (Fla. 2d DCA 2020).

Petitioner filed a motion for post-conviction relief under Rule 3.850, Fla.R.Crim.P., asserting several claims of ineffective assistance of counsel (*Id.*, Ex. 17). The Rule 3.850 motion was summarily denied (*id.*, Ex. 18), and the denial was affirmed on appeal. *Jean-Gilles v. State*, 331 So. 3d 132 (Fla. 2d DCA 2021).

Petitioner filed a motion to correct an illegal sentence under Rule 3.800(a), Fla.R.Crim.P., claiming a double jeopardy violation (*Id.*, Ex. 21). The double jeopardy claim was denied, but the court corrected the sentence on Count IV to reflect a mandatory minimum of 25 years in prison (*Id.*, Ex. 22). The appellate court affirmed. *Jean-Gilles v. State*, 331 So. 3d 850 (Fla. 2d DCA 2021).

Petitioner filed his federal habeas petition in this Court (Doc. 1) in which he alleges two claims for relief.

## II. GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

A. Standard of Review Under the AEDPA

Under the AEDPA, habeas relief may not be granted regarding a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

B. Exhaustion and Procedural Default

The writ of habeas corpus cannot be granted unless the petitioner has exhausted all available state court remedies. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012) (citing 28 U.S.C. § 2254(b), (c)). Exhausting state remedies requires a petitioner to "fairly present" his claims in each appropriate state court "thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) and *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)). Moreover, to properly exhaust a claim, "the [petitioner] must have presented his claims in state court in a procedurally correct manner." *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

Under the procedural default doctrine, a claim raised in a federal habeas petition is barred from review if the claim was not properly raised in state court and "the court to which the petitioner would be required to present [the] claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1. To avoid a procedural default, a petitioner must show "either cause for and actual prejudice from the default or fundamental miscarriage of justice from applying the default." *Lucas*, 682 F.3d at 1353; *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).

C. Ineffective Assistance of Counsel

Petitioner alleges ineffective assistance of counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires showing deficient performance by counsel and resulting prejudice. *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Petitioner must show that counsel's alleged error prejudiced the defense, because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

5

## III. ANALYSIS

**GROUND ONE: PETITIONER WAS DENIED HIS RIGHTS TO DUE PROCESS AND EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED HIM UNDER THE 6TH AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION WHEN COUNSEL FAILED TO FILE AN AMENDED MOTION TO WITHDRAW PLEA (Doc. 1 at 5-6)**

After Petitioner pleaded no-contest and was sentenced, he filed a *pro se* motion to withdraw his plea in which he alleged that: (1) due to his limited understanding of English, he believed he was agreeing to a 30-month sentence rather than a 30-year sentence when he signed the plea agreement; and (2) his attorney "made" him sign the plea agreement (Doc. 10-2, Ex. 10). The trial court struck the motion as facially insufficient because Petitioner failed to allege sufficient facts in support of the claims (*Id.*, Ex. 11). The trial court also appointed conflict-free counsel and ordered conflict-free counsel to confer with Petitioner and file an amended motion to withdraw plea (*Id.*, Ex. 11 at 60). But conflict-free counsel never filed an amended motion (*Id.*, Ex. 13). Petitioner contends that he was denied due process and effective assistance of counsel when conflict-free counsel failed to file an amended motion.

In Claim One of Petitioner's Rule 3.850 motion, he asserted that his plea was involuntary. He alleged that during a hearing on January 18, 2019, the Court informed him the State would offer a prison sentence "somewhere in the range of twenty-five to thirty years." (Doc. 10-2, Ex. 17 at 90-92). He also alleged that both his attorney and interpreter "improperly" informed him the State was offering "any prison term in between twenty-five and thirty years" and told him that if he accepted the State's offer, "he would not do that much time in prison." (*Id.*). The court allowed a two-hour break during which Petitioner

discussed the State's offer with both counsel and the interpreter, and he asked them how long he would spend in prison (*Id.*). Because "an affirmative answer was never given," Petitioner rejected the offer (*Id.*).

During the next three days, counsel and the interpreter told Petitioner that he "must" take the State's offer because he would not win at trial since the evidence "was to[o] much," and the judge was allowing testimony from two children who were prior victims of sexual assault by Petitioner (*Id.*). On January 22, 2019, Petitioner returned to court after counsel and the interpreter told him that "they would be able to get him a little time in prison, but not much." (*Id.*). Because he was "improperly informed and misled by his Interpreter and Attorney concerning the actual sentence that he would be pleading no-contest to[,]" and because he "was having problems understanding the Court," Petitioner "moved forward and accepted an overall plea of thirty years in prison followed by lifetime sexual offender probation." (*Id.*).

When Petitioner returned to jail, he told another detainee that "he had just signed a plea agreement for a little bit of time in prison[,]" and he "showed this man the papers." (*Id.*). The other detainee told Petitioner that "he did not sign for a little bit of time, but [Petitioner would] die in prison . . . [b]ecause [Petitioner would] be eighty-six years old once his prison sentence was finished . . . ." (*Id.*). Petitioner therefore filed his *pro se* Motion to Withdraw Plea on January 25, 2019. (*Id.*).

In Claim Four of Petitioner's Rule 3.850 motion, he asserted that conflict-free counsel was ineffective in failing to file an amended motion to withdraw his plea as the court had instructed counsel to do (Doc. 10-2, Ex. 17 at 95).

In denying these claims, the state post-conviction court stated:

Defendant alleges that he informed counsel at the conclusion of the January 18, 2019, child hearsay/*Williams* Rule hearing, that he wanted to reject the State's plea offer and proceed to trial, but counsel repeatedly told him that he could not win at trial because the evidence was overwhelming, particularly after the trial court ruled that the testimony of two *Williams* Rule witnesses would be admissible. He claims this was unduly coercive. Defendant also contends that counsel told him she would 'be able to get him a little time in prison, but not much," if he agreed to enter a plea. Defendant says he was "having problems understanding the [trial judge]" during the plea hearing, and he entered his plea in reliance on what counsel told him. He thought he was receiving a 30-month sentence, not a 30-year sentence. He argues his misunderstanding was compounded by the trial court's observation at the January 18, 2019, hearing, that Defendant was 65 years old, "[s]o any sentence of any significant length of time w[ould] effectively result in a life sentence ...." He cites, in support, to the fact that he immediately filed a motion to withdraw his plea upon learning that he had, in fact, received a 30-year sentence.

The State responds that Defendant's allegation of coercion is legally insufficient because Defendant fails to set forth the kind of facts that would be impermissibly coercive, such as counsel's threat to withdraw from the case if Defendant refused to enter a guilty plea, or Counsel's misadvice that Defendant would receive only 30 months in prison. The State also asserts that the record refutes the claim, because even if counsel did tell Defendant he could not win at trial, this would have been pursuant to counsel's professional responsibility to advise Defendant of the strength of the State's case, under Fla. R. Crim. P. 3.171(c), and the case against Defendant was exceedingly strong, with evidence including a positive DNA match to Defendant from vaginal and anal swabs taken from K.D.; K.D.'s disclosure to her mother, Monalia St. Louis; K.D.'s disclosure during an interview with Child Protection Team Case Coordinator Kimberly Griffin; and the testimony of two *Williams* rule witnesses, J.E. and S.E. The record also shows that Defendant stated at the plea hearing that he understood the interpreter, and the word "year" was said in court multiple times in reference to his sentence; whereas, at no time was the word "month" used; so that it is not credible that Defendant thought that he was being sentenced to a term of months.

Having reviewed the State's discovery and the deposition testimonies of State witnesses, the Court finds the State's arguments to be persuasive. If counsel did advise Defendant that he could not win at trial, this advice would have fallen within the parameters of providing an honest assessment of the strength of the State's case. *See* Fla. R. Crim. P. 3.171(c); *Dean v. State*, 580 So. 2d 808, 810 (Fla. 3d DCA 1991); *see, e.g., Thomas v. State*, 172 So. 2d 245, 245-

46 (Fla. 2d DCA 1965) (finding counsel's admonition that prosecution had "airtight case" against defendant, including 12 witnesses, some of whom were defendant's children, was insufficient to show coerced plea). It also would have fulfilled counsel's professional duty to provide Defendant with an assessment of whether he could realistically achieve his objectives in the case. *See* R. Reg. Fla. Bar 4-1.4.

The medical examination report prepared by Dr. Jerome Isaac indicates that Isaac collected rape kit samples from K.D. on September 18, 2015. The FDLE laboratory report, prepared by FDLE analyst John Robida, dated March 22, 2016, indicates that the samples in the rape kit were compared to buccal swabs taken from K.D. and Defendant, and that the vaginal and anal swabs from K.D. had foreign DNA matching Defendant's DNA profile within a reasonable degree of scientific certainty. Robida discussed his process in more detail during his deposition testimony, and he gave the statistical possibility of someone having Defendant's DNA profile at more than one in 700 billion.

The report of CPT Case Coordinator Kimberly Griffin indicates that she interviewed 9-year-old K.D. on the same day as the medical examination. K.D. said Defendant took her to the bedroom, "grabbed her legs, pulled down her underwear and licked her private part (vagina)" and then "put his private part into her private part." Defendant also touched her nipples and she saw "a clear liquid" come from his "private part" onto the sheets. K.D. said that Defendant "raped" her more than one time, and she remembered once when he came into the bathroom with her and put "his private part into her private part" and squeezed her nipples. Griffin gave testimony about the disclosure at the child hearsay hearing, conducted January 18, 2019, and the trial court found that K.D.'s disclosure to Griffin was admissible child hearsay testimony, after a hearing on the matter, conducted January 18, 2019.

Ms. St. Louis testified in her deposition that she returned home from work one day and found K.D. looking sad, refusing food, and saying she had stomach cramps and pain. St. Louis also noticed K.D. was "walking funny." Defendant was in the room, and minutes before K.D. made her disclosures, Defendant said, "I think something gonna happen to me" and "don't listen to [K.D.]." K.D. then told St. Louis that Defendant touched her and put his "privacy" on her "privacy" and "squeeze[ed] [her] boob" Defendant asked St. Louis not to call or say anything to anyone. K.D. told St. Louis later that Defendant had done it to her before on three occasions, and the first time was when she was 6 years old; she described how Defendant wiped the "water" that came from his "private" onto the mattress. The trial court also found Ms. St. Louis' testimony about K.D.'s disclosures to be admissible child hearsay testimony.

Finally, two other minor victims of Defendant's abuse, S.E. and J.E., were permitted by the trial court to give limited testimony, as similar fact/*Williams* rule witnesses, that Defendant touched their breasts and/or vagina, or the clothing over those areas.

Counsel averred at the plea hearing that she reviewed with Defendant "the entirety of the State's evidence multiple times on various occasions." The trial court granted a break in the proceedings so that Defendant could consider the State's plea offer in light of counsel's previously [sic] discussions with him. Based on the State's strong evidence of Defendant's guilt, any advice by counsel given at the plea hearing, or prior to that time, that Defendant could not win at trial, would have been entirely appropriate.

The transcript of the plea and sentencing hearing also supports finding that Defendant understood that he was being sentenced to 30 years, and not 30 months. Defendant acknowledged that his attorney, through the interpreter, had gone through the Acknowledgment and Waiver of Right plea form with him, line by line, and that he understood it. The form stated that he was agreeing to an overall 30-year sentence with a 25-year minimum mandatory on Count 4. Counsel also set forth the terms of the agreement in open court, including the requirement for concurrent 30-year sentences, and Defendant also said he understood them.

From Defendant's Reply, it is apparent that Defendant is now suggesting that he was incompetent at the time of the plea hearing, so that his responses during the plea colloquy should be disregarded. The trial judge took the careful steps necessary throughout this case to ensure that Defendant was appropriately treated during the times of his incompetency, and the court accepted his plea only after the determination that he was competent, based on the forensic evaluation report of James Pitman, Psy. D., and Theresa Ascheman Joes, Psy. D.

Finally, the fact that Defendant initially rejected the plea offer a week before accepting it, and later had remorse and sought to withdraw his plea after being sentenced, is unremarkable. He was certainly faced with unpleasant choices and no doubt wished for a better result; however, Defendant ultimately chose the sentence that gave him the possibility of spending some years outside of prison, which his conviction after trial would assuredly have foreclosed. The fact that he was forced to make this choice, and did so on counsel's advice, did not render counsel's performance deficient or Defendant's plea involuntary. *See, generally, Costello v. State*, 260 So. 2d 198, 201 (Fla. 1972) (disgruntlement over sentence is not cause to find plea involuntary).

Ground 1 shall, therefore, be denied.

* * *

Defendant alleges that appointed counsel from the Office of Regional Counsel and Criminal Conflict ("ORC") was ineffective because counsel failed to assist him in filing an amended motion to withdraw plea after the Court appointed ORC for this purpose in its Order filed February 14, 2019. Apparently [sic] Defendant alleges that, had the amended motion been filed, it would have asserted that his plea was involuntary for the reasons set forth in Ground 1 of his postconviction motion.

Counsel is not obliged to file an amended motion where there are no potentially viable grounds to support it. *Cf. Gonzales v. State*, 993 So. 2d 55, 57-58 (Fla. 5th DCA 2008) (finding trial court did not err in refusing to discharge counsel appointed to assist defendant with amended motion to withdraw plea who testified that he investigated potential grounds and found no good faith basis for filing amended motion). The failure to file a motion to withdraw plea is deemed deficient only if it is determined that the defendant's plea was, in fact, involuntary. *See Lane v. State*, 839 So. 2d 854, 855 (Fla. 1st DCA 2003).

Because the Court has resolved Ground 1, and found it to be without merit, Defendant cannot succeed on this claim. While the Court does not condone the actions of ORC in failing to file either a notice indicating that it did not intend to file an amended motion, or a request to withdraw, so that Defendant could prepare a *pro se* amended motion, the Court finds that ORC's failure to file an amended motion in this case did not prejudice Defendant. Had such an amended motion been filed citing, as cause, the allegations enumerated in Ground 1 of Defendant's postconviction motion, it would have been denied.

(*Id.*, Ex. 18 at 106-10, 116-17) (footnotes omitted). The state appellate court affirmed without a written opinion. *Jean-Gilles v. State*, 331 So. 3d 132 (Fla. 2d DCA 2021) (table).

I. Denial of Due Process Claim

To the extent that Petitioner contends he was denied due process of law when conflict-free counsel failed to file an amended motion to withdraw his plea, Respondent argues the claim is procedurally barred from review (Doc. 10 at 20-22). The Court agrees. A review of the record reveals Petitioner failed to raise a violation of due process claim in either his direct appeal proceedings or his Rule 3.850 post-conviction proceedings. He cannot return to the state courts to litigate this claim because it would be procedurally barred under state

procedural rules. *See, e.g.*, Rule 3.850(h), Fla.R.Crim.P. (successive-petition bar), Rule 3.850(b), Fla.R.Crim.P. (time-bar). Because Petitioner can no longer present the claim in the state courts, it is procedurally defaulted for purposes of federal habeas. *Coleman*, 501 U.S. at 735 n.1; *Henderson*, 353 F.3d at 891. And Petitioner fails to allege let alone establish cause and prejudice or a fundamental miscarriage of justice to excuse the procedural default of this claim. Therefore, the due process claim is procedurally barred from habeas review.

## II. Ineffective Assistance of Counsel Claim

To the extent Petitioner contends conflict-free counsel was ineffective in failing to file an amended motion to withdraw his plea, the state post-conviction court's denial of the claim was reasonable. Under *Strickland*, because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Petitioner must establish that counsel's alleged deficient performance resulted in prejudice. *Strickland*, 466 U.S. at 691–92. To meet this burden, Petitioner must show a reasonable probability that, but for conflict-free counsel's unprofessional errors, the trial court would have granted an amended motion to withdraw the plea. *See, e.g.*, *Bargman v. Crosby*, 2006 WL 2425422, at *6 (M.D. Fla. Aug. 21, 2006) (in a claim contending counsel was ineffective in failing to withdraw defendant's plea, "the prejudice prong of *Strickland* requires [petitioner] to show that a motion to withdraw his plea would have been granted."); *Johnson v. Jones*, 2018 WL 1722532, at *7 (N.D. Fla. Mar. 23, 2018), *report and recommendation adopted*, 2018 WL 1721931 (N.D. Fla. Apr. 9, 2018) (where a state post-conviction court reasonably concludes that even if a motion to withdraw plea after sentencing had been filed, it had no reasonable probability of success, "the prejudice

prong of *Strickland* has not been met."). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694.

The state post-conviction court rejected Petitioner's claim that conflict-free counsel was ineffective in failing to file an amended motion to withdraw Petitioner's plea, finding Petitioner was not prejudiced because any amended motion to withdraw on the grounds that Petitioner's plea was involuntary or coerced would have been denied (Doc. 10-2, Ex. 18 at 116-17). To obtain relief on this claim, Petitioner must establish that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying this claim in his Rule 3.850 motion. Petitioner fails to do so.

When Petitioner entered his no-contest plea, the state court complied with the requirements for determining the voluntariness of Petitioner's plea under Rule 3.172(c), Florida Rules of Criminal Procedure (Doc. 10-2, Ex. 9). And the record affirmatively demonstrates that Petitioner's plea was knowingly and intelligently entered.

The change of plea colloquy shows that the trial court informed Petitioner that if he proceeded to trial and was convicted on Counts 1, 2, or 3, he was facing a mandatory minimum sentence of life in prison, and that Count 4 carried a mandatory minimum sentence of 25 years in prison (*Id.*, Ex. 9 at 38-39). Petitioner affirmed that he understood the penalties he faced were he to proceed to trial and be convicted. (*Id.*, Ex. 9 at 39-40). The court then paused the proceeding to allow Petitioner to meet with defense counsel and the prosecutor (*Id.*, Ex. 9 at 40-42). When the proceeding recommenced, defense counsel announced the parties had reached an agreement in which Petitioner would plead no contest to the lesser offense of attempted sexual battery for Counts 1, 2, and 3, and plead no contest to Count 4

(*Id.*, Ex. 9 at 42-43). She explained Petitioner would be sentenced to 30 years on each count (concurrent) and Count 4 included a mandatory minimum sentence of 25 years followed by lifetime sex-offender probation (*Id.*). Petitioner verified that he understood the sentence he was facing and that no one had threatened or coerced him into accepting the plea agreement or promised him anything to sign the agreement (*Id.*, Ex. 9 at 45-46).

The Acknowledgment and Waiver of Rights form Petitioner signed during the break in the proceedings expressly stated Petitioner understood his sentence would be 30 years in prison with a 25-year mandatory minimum followed by life on probation (*Id.*, Ex. 8). By signing the form, Petitioner also verified that accepting the plea was his decision, and no one had forced or threatened him or promised him anything to enter the plea (*Id.*, Ex. 8 at ¶ 7). Considering the written plea agreement and the plea colloquy, it would not have been reasonable for conflict-free counsel to file an amended motion to withdraw the plea, because there was no support under Florida law for such a motion.[2]

In Florida, a defendant must establish good cause for withdrawal of a guilty plea. *Castello v. State*, 260 So.2d 198 (Fla.1982); *Adler v. State*, 382 So.2d 1298 (Fla. 3d DCA 1980). A defendant has the burden of establishing grounds to withdraw a guilty plea and "mere naked allegations," unsupported by any proof, will "never constitute a basis for withdrawal of a plea." *Brown v. State*, 428 So.2d 369, 371 (Fla. 5th DCA 1983).

---

[2] A defendant who seeks to withdraw a plea of guilty or no contest after sentencing must show manifest injustice in addition to showing one of the grounds set forth in Florida Rule of Appellate Procedure 9.140(b), including a lack of subject matter jurisdiction, a violation of the plea agreement, or an involuntary plea. *See* Rule 3.170, Fla.R.Crim.P.; *Campbell v. State*, 125 So. 3d 733, 736 (Fla. 2013).

To the extent that Petitioner contends he was coerced by counsel into entering the plea agreement, Petitioner's sworn testimony during the plea hearing refutes his claim. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (Although a defendant's statements during the plea colloquy are not insurmountable, "the representations of the defendant [at a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."). During the plea colloquy, Petitioner acknowledged, under oath, that counsel read every word of the plea agreement to him, that he understood the plea agreement, and that everything in the plea agreement was true and correct (Doc. 10-2, Ex. 9 at 45). He acknowledged that nobody had forced, threatened, or coerced him into entering his plea (*Id.*, Ex. 9 at 45). He also acknowledged that he was satisfied with the services of his attorney (*Id.*, Ex. 9 at 47). Finally, he said he understood that the decision whether to go to trial was "entirely" his (*Id.*, Ex. 9 at 39-40). Petitioner has not rebutted the strong presumption that these statements were true. *See United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during the [plea] colloquy are true.") (citation omitted).

To the extent that Petitioner contends he was in some way misinformed or mislead by counsel to believe he would be sentenced to only 30 months in prison, and that the knowing and voluntary nature of his guilty plea was undermined by counsel's advice, the record belies any such contention. Initially, Petitioner has never alleged that either counsel or the interpreter told him he would be sentenced to, or only serve, 30 months in prison. Rather, in his *pro se* Motion to Withdraw Plea, he stated, "[I] thought [I] was signing 30 months . . . ."

(Doc. 10-2, Ex. 10). And in his Rule 3.850 motion, he alleged that after the court, counsel, and the interpreter informed him on January 19, 2019, that the State was offering a prison sentence "between 25 and 30 years," counsel and the interpreter informed him that "he would not do that much time in prison." (*Id.*, Ex. 17 at 90). He also alleged that before he returned to court on January 22, 2019, counsel and the interpreter told him that "they would be able to get him a little time in prison, but not much." (*Id.*, Ex. 17 at 91).

During the change of plea colloquy on January 22, 2019, defense counsel explained all the details of the plea agreement, including that Petitioner's sentence would be "30 years in the Department of Corrections." (Doc. 10-2, Ex. 9 at 43). Petitioner confirmed that he understood the details of the plea agreement and the potential sentence (*Id.*, Ex. 9 at 45). And Petitioner executed a change of plea form which comprehensively covered the consequences of his plea, including a sentence of 30 years (*Id.*, Ex. 8). Thus, the record conclusively refutes Petitioner's contention that he based his plea on counsel's advice that he would receive 30 months in prison. And even if *before* the change of plea hearing counsel had told Petitioner that he would not *serve* 30 years in prison or that he would get "a little time in prison, but not much," that did not render Petitioner's plea involuntary, especially when both the court and counsel informed Petitioner *during* the hearing that he would receive a 30-year sentence. *See Langford v. United States*, 2009 WL 6467043, at *6 (S.D. Ala. Oct. 23, 2009), *report and recommendation adopted*, 2010 WL 1949480 (S.D. Ala. May 12, 2010) ("[A] lengthier than anticipated sentence does not, without more, render a guilty plea involuntary."); *U.S. v. Cardenas*, 230 Fed. App'x. 933, 936 (11th Cir.2007) (finding unpersuasive defendant's argument that his guilty plea was involuntary because his lawyer advised him that he would

16

receive a sentence shorter than the sentence ultimately imposed, where the court warned defendant that he could receive the maximum sentence allowed by law, and defendant told the court that he was not relying on promises made to him outside of his plea agreement, no one told him exactly what sentence he would receive, and he would plead guilty even though he did not know what sentence he would receive because of his plea). If Petitioner believed that he would receive a 30-month sentence, it was incumbent upon him to speak up during the plea colloquy and his failure to do so at that time would have estopped him "from later arguing a position contrary to statements made in open court or in writing." *See Simmons v. State*, 611 So.2d 1250, 1253 (Fla. 2d DCA 1992); *Resta v. State*, 698 So.2d 378, 379 (Fla. 3d DCA 1997).

Petitioner has not established that conflict-free counsel's failure to file an amended motion to withdraw Petitioner's no-contest plea was deficient. Given Petitioner's sworn answers made during the change of plea hearing and his certification on the Acknowledgment and Waiver of Rights form, no reasonable attorney would have pursued a motion to withdraw Petitioner's no-contest plea. Conflict-free counsel could not have been ineffective in failing to file an amended motion with no merit.

In considering whether counsel's performance was deficient, the inquiry focuses on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. Here, conflict-free counsel's performance has not been shown to have been deficient. Nor has Petitioner demonstrated prejudice from conflict-free counsel's performance. To satisfy the prejudice prong of *Strickland*, Petitioner must show that the state court would have granted a motion to withdraw his plea. As discussed, Petitioner presents

no factual or legal support to demonstrate that he would have prevailed on such a motion and the record conclusively establishes that such a motion would have been denied. Absent a demonstration of prejudice, Petitioner cannot prevail on this claim of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 697. Consequently, Petitioner fails to meet his burden of proving that the state court's denial of this claim was an unreasonable application of controlling Supreme Court precedent or based on an unreasonable determination of the facts. Ground One therefore warrants no relief.

Accordingly:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The Clerk of the Court shall enter judgment against Petitioner and close this case.

2. This Court should grant an application for a Certificate of Appealability (COA) only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He cannot make this showing. Accordingly, a COA is **DENIED**. And because Petitioner is not entitled to a COA, he may not proceed on appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida on October 29, 2024.

Charlene Edwards Honeywell
United States District Judge

Copies to: Petitioner, *pro se*
Counsel of Record

18